UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**United States**

v.

**Andrew Dufresne**

Case No. 16-cr-75-1-PB
Opinion No. 2020 DNH 169

**MEMORANDUM AND ORDER**

Defendant Andrew Dufresne moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"), as amended by Section 603(b)(1) of the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239, or, in the alternative, seeks a recommendation from the court that he serve the final twelve months of his sentence in a residential reentry center, pursuant to 18 U.S.C. § 3624. For the following reasons, I grant Dufresne's motion for compassionate release subject to the conditions specified in this Memorandum and Order (Doc. No. 23).[1]

**I.   STANDARD OF REVIEW**

Following its amendment by the First Step Act, the compassionate release statute, codified as Section 3582(c)(1)(A), provides that

> the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after

---

[1] Because I grant Dufresne's motion on these grounds, I need not address his argument for alternative relief.

> the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable . . . .

§ 3582(c)(1)(A). The court may reduce a defendant's prison sentence if it finds that "extraordinary and compelling reasons warrant such a reduction," id. § 3582(c)(1)(A)(i), and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A).

The Sentencing Commission's policy statement ("the policy statement"), which was promulgated prior to the passage of the First Step Act, provides as follows:

> Upon motion of the Director of the [BOP] under [Section 3582(c)(1)(A)], the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in [Section 3553(a)], to the extent that they are applicable, the court determines that —
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

2

U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13 (U.S. Sentencing Comm'n 2018). The commentary to the policy statement further explains what is meant by "extraordinary and compelling reasons." It states, in relevant part, that "[p]rovided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist," USSG § 1B1.13 cmt. n.1, when "[t]he defendant is . . . suffering from a serious physical or medical condition," id. § 1B1.13 cmt. n.1(A)(ii)(I).

District courts are divided on whether the policy statement remains binding following the enactment of the First Step Act. Cf. United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019) (collecting cases). I am not aware of any court that has chosen to disregard the policy statement entirely. I conclude, instead, that it "provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change." Id. at *3.

## II. BACKGROUND

In 2016, Dufresne "waived indictment and pled guilty to an [i]nformation[,]" charging him with "bank robbery in violation of 18 U.S.C. § 2113(a)." Mot. for Compassionate Release or Alternative Relief ("Mot. for Compassionate Release"), Doc. No. 23 at 2; accord Waiver of an Indictment, Doc. No. 8. His "guideline [sentencing] range . . . was [sixty-three] to

[seventy-eight] months[,]" and I sentenced him to a term of imprisonment of sixty-three months, "to be served consecutive to a sentence he was then serving in the Commonwealth of Massachusetts, with three years of supervised release to follow." Doc. No. 23 at 2; accord J. in a Crim. Case, Doc. No. 19 at 2-3. "He has served approximately [seventeen] months . . . of his statutory sentence and has another approximate [thirty-seven] months . . . left to serve (allowing for good conduct credit)," Doc. No. 23 at 2, and is presently incarcerated at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"), after various transfers between BOP facilities in New Hampshire, Massachusetts, and West Virginia, Doc. No. 23 at 2.

Dufresne currently suffers from chronic obstructive pulmonary disease ("COPD"), asthma, and bronchitis. Doc. No. 23 at 1, 4. He has been prescribed at least three different inhalers to manage his asthma and COPD. Doc. No. 23 at 4. Although he has already undergone several hernia surgeries, he needs another that is presently delayed until "his pulmonary condition" improves. Doc. No. 23 at 4. He also "struggles with . . . Attention Deficit Hyperactivity Disorder . . . and anxiety disorder." Doc. No. 23 at 9.

In light of his medical conditions, Dufresne submitted two requests for compassionate release to the BOP — first, on April

4

15, 2020, and a second on April 24. Doc. No. 23 at 6. The BOP denied his requests on April 30. Doc. No. 23 at 6; accord Ex. B to Mot. for Compassionate Release, Doc. No. 23-2. Dufresne administratively appealed. Doc. No. 23 at 6. He then filed this motion for compassionate release on July 25, requesting a sentence reduction to time served, among other relief. Doc. No. 23 at 11. I held a hearing on Dufresne's motion on August 26.

### III. DISCUSSION

Because the BOP denied Dufresne's request for a reduction in sentence, Doc. No. 23-2; accord Doc. No. 23 at 6, and failed to respond to his administrative appeal within thirty days, Doc. No. 23 at 6, Dufresne has exhausted his administrative rights, and so his motion is properly before me under Section 3582(c)(1)(A). At the hearing on this motion, the government agreed that Dufresne's medical conditions — namely, his COPD — meet the policy statement commentary's definition of "extraordinary and compelling reasons" in light of the COVID-19 pandemic. See United States' Opposition to Def.'s Mot. for Release, Doc. No. 28 at 8 (agreeing that the statement's "threshold requirement" is met). Other federal district courts have found this requirement is met for defendants with similar medical conditions to Dufresne's, recognizing COPD, for example, as a medical condition that places a defendant "at a heightened risk of severe illness from COVID-19." E.g., United States v.

5

Hernandez, No. 10-CR-1288-LTS, 2020 WL 3893513, at *2 (S.D.N.Y. July 10, 2020) (finding "extraordinary and compelling circumstances" during COVID-19 pandemic for a defendant with COPD, among other illnesses); United States v. McCarthy, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) (same for a defendant with COPD and asthma); accord Doc. No. 23 at 5 (providing cases); cf. United States v. Hernandez, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020) (same for a defendant with asthma). Although the generalized risk of contracting COVID-19 at MDC Brooklyn remains low, the risk specific to Dufresne based on his current health conditions is high, and the potential health ramifications should he contract the virus are severe. See, e.g., Hernandez, 2020 WL 3893513, at *2. I concur, therefore, that the "extraordinary and compelling reasons" are met under the policy statement. Accordingly, I must return to the familiar Section 3553(a) factors and also determine whether Dufresne is "a danger to the safety of any other person or to the community" under Section 1B1.13(1)(B) of the USSG.

After reviewing Dufresne's presentence investigation report ("PSR"), the parties' briefs and supplemental materials, and his BOP records, I find that the bulk of the Section 3553(a) factors weigh in favor of compassionate release. When reaching this decision, I consider, among other factors, "the nature and circumstances of the offense and the history and characteristics

6

of the defendant," § 3553(a)(1), and "the need for the sentence imposed . . . to provide the defendant with needed . . . medical care[] or other correctional treatment in the most effective manner," § 3553(a)(2)(D).

Dufresne, presently forty-eight years old, Doc. No. 23 at 7, has a lengthy criminal history dating back to his first adult criminal conviction in 1989 at the age of seventeen, PSR, Doc. No. 16 at 6 ¶ 26. The offense for which he is presently incarcerated — bank robbery — is a serious one, though he was not armed at the time, Doc. No. 28 at 9, and had never before committed bank robbery, Doc. No. 23 at 9. He has a history of drug use, namely cocaine, which he started using at age eighteen, at first "using it every weekend in the 1990s," until "his use progressed to every other day," in 2005. Doc. No. 16 at 28 ¶ 90. He completed residential treatment in 2012 and "resided at . . . a sober house . . . for approximately two years . . . from July 2012 to March 2014." Doc. No. 16 at 28 ¶ 91. Both of his parents used cocaine, as well. Doc. No. 16 at 26 ¶ 82.

The only Section 3553(a) factor potentially weighing against release is the need "to protect the public from further crimes of the defendant." § 3553(a)(2)(C). This factor is substantially similar to the policy statement's instruction to

evaluate whether the defendant is "a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

The danger that Dufresne poses to the public is real. His past criminal conduct includes numerous state convictions for theft and burglary, as well as assault and battery. Doc. No. 16 at 6 ¶ 26 — 22 ¶ 62. He is currently serving a federal sentence for a serious felony that he committed while wanted on unrelated state charges in the Commonwealth of Massachusetts. Doc. No. 23 at 8; Doc. No. 16 at 4 ¶ 7 — 5 ¶ 8. When I sentenced him, he was serving a multi-year sentence imposed by a Massachusetts state court on twelve counts of larceny, credit card fraud, and receiving stolen property. Doc. No. 16 at 22 ¶ 62.

Despite his extensive criminal history, Dufresne has incurred relatively few "minor disciplinary write-ups" while in federal prison, including one for "hitting a distress button in FCI Berlin after experiencing severe pain from his hernia," for which he was later hospitalized. E.g., Doc. No. 23 at 8. At the motion hearing, U.S. Probation also confirmed that the last infraction Dufresne incurred was approximately one year ago. Furthermore, he has participated in several educational courses, was employed while incarcerated at FCI Berlin, and has engaged in two drug education programs. Doc. No. 23 at 8.

The danger that Dufresne poses is substantially mitigated if he addresses his underlying addiction issues, see Letter from

Andrew Dufresne to the Hon. Ct. (Aug. 17, 2020), Ex. to Addendum to Def.'s Mot. for Compassionate Release, Doc. No. 30-1 ("I have never successfully completed drug treatment, but I would like to do that now."), which is bolstered by his pre-negotiated reacceptance into his former sober house, should he be released, see Addendum to Def.'s Mot. for Compassionate Release, Doc. No. 29 at 1. Although he has pursued "two . . . drug education and relapse prevention programs," Doc. No. 23 at 8, while in federal prison, "[c]urrently he has no access to" the BOP's residential drug abuse program ("RDAP") "or any other in-depth drug treatment program," Doc. No. 23 at 9. Because Dufresne's drug use and criminal history seemingly go hand-in-hand, it benefits the public if he receives the intensive drug treatment programming required to support his efforts to become a law-abiding citizen. Cf. § 3553(a)(2)(D) (providing defendant with appropriate treatment is one of the factors to consider). His physical incapacitation by his medical conditions further reduces his risk to the public.

    Although I am not blind to the risk that Dufresne poses to the public if he is released without adequate supervision, I am satisfied that that risk can be mitigated by requiring him to serve the first year of his remaining sentence in a residential reentry center and then requiring him to reside at, and abide by, all requirements of a sober house approved by his probation

9

officer. During the remaining portion of his sentence, Dufresne shall abide by all previously imposed conditions of supervised release. After he completes the incarcerative portion of his sentence, he shall serve the supervised release term imposed as a part of his original sentence.

## IV.   CONCLUSION

For the foregoing reasons, Dufresne's motion for compassionate release (Doc. No. 23) is granted as follows:

1) Dufresne's previously imposed sentence of imprisonment of sixty-three months is reduced to time served.

2) Dufresne shall be subject to a term of special supervised release until August 16, 2023, his projected statutory release date. During this special supervised release period, Dufresne shall abide by all of his originally imposed supervised release conditions.

3) During the first twelve months of the special supervised release period, Dufresne shall reside at a residential reentry center.

4) For the remaining portion of the special supervised release period, Dufresne shall reside at and abide by all rules of the Able House, a recovery home in Springfield, Massachusetts, or an alternate facility approved by his probation officer.

10

5) Following the completion of the special supervised release period, Dufresne shall be subject to his original three-year supervised release term.

6) The clerk shall set a telephone conference with counsel to discuss proposed terms of supervised release and the content of the amended judgment that the court will issue prior to Dufresne's release.

7) This order is stayed up to fourteen days, for the verification of Dufresne's release plan, to make appropriate travel arrangements, and to ensure his safe release. He shall be released as soon as this information is verified and arrangements are made.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

September 29, 2020

cc:  Jeffrey S. Levin, Esq.
     Charles L. Rombeau, Esq.
     Helen W. Fitzgibbon, Esq.
     Michael T. McCormack, Esq.
     U.S. Marshal
     U.S. Probation