## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Case No. 16-cr-75-PB |
| | : | |
| v. | : | |
| | : | |
| ANDREW DUFRESNE | : | |
| | : | |

### UNITED STATES' SENTENCING REPLY MEMORANDUM

Defendant was granted compassionate release under 18 U.S.C. § 3582(c)(1)(A) in fall 2020 and resentenced to a sentence of time-served as of October 15, 2020, a term of "special supervised release" to run through his original release date from prison, August 16, 2023, with his original term of three years' supervised release to follow.  Unfortunately, defendant quickly violated the terms of his special release, and now stands before the Court in a case of apparent first impression in this District regarding both the available and appropriate remedies for his conduct.  The government concurs in the recommendation of the Probation Office and requests the defendant be returned to Bureau of Prisons ("BOP") custody until his original release date in August 2023.

### Background

On June 29, 2016, defendant pled guilty to a one-count information charging him with the unarmed robbery of a Manchester, New Hampshire bank on April 9, 2014.  In November 2016, the Court sentenced defendant to 63 months of imprisonment, with the sentence to be served consecutive to defendant's then-running state prison sentence out of Massachusetts.  In early 2019, defendant was paroled from the Massachusetts prison into the Bureau of Prison's custody, at which time he began his federal sentence.

In July 2020, defendant moved for compassionate release under 18 U.S.C.
§ 3582(c)(1)(A), relying on the threat posed by the COVID-19 pandemic and his specific health
risks.  The government conceded that defendant had exhausted his BOP administrative remedies
and that defendant's health conditions met the threshold requirement of "extraordinary and
compelling reasons."  USSG § 1B1.13, cmt. n.1(A).  In particular, defendant's diagnosis of
chronic obstructive pulmonary disease, or COPD, placed him at an increased risk of severe
illness from Covid-19 according to the then latest CDC Guidelines.  The government nonetheless
objected to defendant's release because of the nature and circumstances of the offense, the
history and characteristics of the defendant, and the need for the sentence to provide adequate
deterrence, among the other § 3553(a) factors.

The Court held a hearing over video on August 26, 2020 and later issued a written
opinion granting the motion.  *See* Dkt. No. 31.  An amended sentence and judgment were also
issued on October 13, 2020, formally imposing the sentence of "special supervised release"
running through August 16, 2023, to be followed by the originally imposed term of 3 years'
supervised release.  *See* Dkt. Nos. 32, 33.  The Court also ordered defendant reside at a
residential reentry center during the first twelve months of special supervised release, and at a
recovery home for the remaining duration of the time.  *Id.*

### The Supervised Release Violations

Following defendant's release from BOP custody, he initially resided at the Coolidge
House residential reentry center in Boston.  He received three incident reports at Coolidge House
all relating to travel to New Hampshire to see his new girlfriend.  In December 2020, defendant
requested to have his residency transferred to the Hampshire House residential reentry center in
Manchester, NH.  On January 1, 2021, defendant moved into the Hampshire House.

Defendant now stands before the Court accused of six violations of his conditions of special supervised release, all of which accrued following his arrival at Hampshire House at the start of the new year.  The government understands that defendant intends to plead true to these allegations, which are:

- On January 3, 2021, that defendant packed up his belongings and left the Hampshire House without permission of staff or his supervising officer.

- On February 3, 2021, that defendant fabricated paperwork and lied to his supervising officer about attending an overnight "sleep study" in Boston which was in fact a ruse to get an overnight visit with his girlfriend.

- On February 3, 2021, as a result of his fabricated sleep study, defendant was terminated by Hampshire House.

- On February 17, 2021, the day after he was ordered released on conditions by Magistrate Judge Johnstone, defendant violated his Court-ordered quarantine period by leaving his residence without permission of the supervising officer.

- On February 19, 2021, despite being on electronic monitoring and home detention at the Starting Point facility in Manchester, NH, defendant left the residence without permission from his supervising officer to meet up with his girlfriend. And

- On February 20, 2021, defendant was terminated from Starting Point as a result of using Suboxone without a prescription.

### The Available Penalties

The Violation Report raises the question of the available penalty for the defendant's violation of his term of "special supervised release."  As the Violation Report notes, 18 U.S.C.

§ 3582(c)(1)(A), authorized the Court's modification of defendant's term of imprisonment and imposition of the term of special supervised release, but provides no guidance on whether or how the Court may revoke release.  To be sure, strange results would ensue if the statute's silence on revocation were to mean special terms of supervised release cannot be revoked.  Defendant, to his credit, does not advance such an argument.  *See* Def's Sentencing Mem. at 2, Dkt. No. 60.

Starting from that shared understanding that the special term *can* be revoked, there appear two options available to the Court in this proceeding.  One option, advanced by defendant, is that the Court and subject to the limitations in § 3583.  *See* Def's Sentencing Mem. at 2, Dkt. No. 60. In defendant's preferred reading under that provision, he would face a statutory maximum penalty of 24 months because his original crime of conviction, bank robbery in violation of 18 U.S.C. § 2113(a), is a C felony.  *See* 18 U.S.C. § 3583(b)(2) and (e)(3).  In addition, because his violations were C grade level violations, and he was a Criminal History Category VI at the time of his original sentencing, he would be facing a Guidelines Range of 8-14 months on revocation.

The second option, advanced in the Violation Report, appears more sound in this unique proceeding.  That is, section 3852(c)(1)(A) authorized the Court's reduction of "the term of imprisonment" and the imposition of "a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."  18 U.S.C. § 3582(c)(1)(A).  Defendant is currently serving the special term of supervised release authorized by § 3582.  The Violation Report then looks to § 3583(e)(3)'s authorization of a sentence that requires defendant "to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release" in allowing for the revocation sentence to go up to the length of "unserved portion of the original term."

Thus, the Violation Report concludes the Court may revoke defendant's release and return him to BOP custody for the duration of what would have been his original sentence.

These statutes are by no means clear on the issue, and the government notes that it could find no applicable case law to bring to the Court's attention.[1]  Nonetheless, the Violation Report's logic is sound.  First, the compassionate release statute contemplates a substitute—either special probation or supervised release—for incarceration for the length of the original penalty of incarceration.  18 U.S.C. § 3582(c)(1)(A).  The substitute, or change from the original sentence, is only warranted upon a showing of "extraordinary and compelling reasons."  It is consistent with the nature of the grant of compassionate release to allow the violation of the substitute penalty to extend up to the length of the original penalty.

Second, a fair reading of the defendant's new sentence—a term of special supervised release through August 16, 2023 to be followed by his regular term of 3 years' supervised release—makes clear a distinction was intended between what would have been defendant's original term of incarceration and what is to follow next.  If the penalties are to be the same for a violation of special supervised release as they would be for a violation of regular supervised release, as defendant advocates, then the "special" term would be indistinguishable from the regular term.  Defendant's proposed approach would render the split sentence meaningless.

Third, were this revocation proceeding to be treated simply as a regular revocation, defendant could benefit in strange ways because the length of additional supervised release the Court can impose following a regular revocation is offset by the length of the new period of incarceration pursuant to 18 U.S.C. § 3583(h).  For example, were the Court to incarcerate

---

[1] The government additionally conferred the Executive Office for United States Attorneys, but the Department of Justice as of yet has not provided formal guidance on this apparent case of first impression.

defendant for 14 months on the violation as a regular violation, the Court would appear to be limited in imposing a new period of supervised release of 22 months following defendant's release under that provision.[2]  Where defendant has not yet even begun his "regular" term of three years of supervised release, he could potentially benefit through a substantially limited period of supervision.

In sum, the government requests the Court adopt the recommendation of the Violation Report and conclude that the Court has the authority to revoke the term of "special supervised release" for a length of time up through defendant's original release date.

### Sentencing Recommendation

Defendant's violation of his term of special supervised release, in the middle of a once in a century pandemic, following his early release from prison on compassionate release grounds, presents a unique and complex set of factors for the Court's consideration in fashioning an appropriate sentence.  Section 3583(e) directs the court to weigh some, but not all, of the § 3553(a) factors in fashioning its sentence:  "the nature and circumstances of the offense and the history and characteristics of the defendant," and the need for a sentence "to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, and other correctional treatment in the most effective manner."  18 U.S.C. §§ 3583(e); 3553(a)(1), (a)(2)(B). (a)(2)(C), (a)(2)(D).

At the time of his original sentence, defendant was 42 years old, and had accumulated a massive array of felony convictions as an adult.  The PSR reflects that record in detail, including

---

[2] The PSR notes the statutory maximum of supervised release for the violation of 18 U.S.C. § 2113(a) is 3 years.  PSR ¶ 100.

defendant's past convictions, among others, for assault and battery, breaking and entering, attempted burglary, burglary, larceny and receiving stolen property.   PSR ¶¶ 45-62.  Added up, defendant had accumulated an astonishing 43 criminal history points, placing him in Criminal History Category VI.  PSR ¶ 65.

After having been incarcerated since 2014 on state and federal charges, defendant's receipt of compassionate release in 2020 allowed him to avoid almost three additional years of federal incarceration.  Presented with this tremendous opportunity, defendant almost immediately found himself in trouble entirely of his own making.  He failed to comply with applicable rules and repeatedly lied to his supervising officer and the residential facilities tasked with ensuring his compliance with program rules.  Egregiously, he forged a document purporting to demonstrate his participation in a sleep study in order to dupe his supervising officer and housing program into approving an overnight away.  Of course, there was no sleep study and he spent his night away with his girlfriend.  The Violation Report even details defendant's apparent tampering with the electronic monitoring device he was ordered to wear in February 2021 after initially being released pending his final revocation hearing.  Defendant has thus far evinced a contempt for the rules and conditions imposed on him by his supervising officer.

Somewhat brazenly, defendant seeks to use his non-compliance to request, in essence, the wholesale elimination of the terms of his "special supervised release," with a sentence of time-served and release not to the Court-ordered residential reentry center, but to his girlfriend's house on home detention with electronic monitoring.  Def's Sentencing Mem. at 7.  Defendant argues he is "anxious to demonstrate to the Court that he can adjust to life on the outside, and just asks that he be given the opportunity." *Id.*  With all due respect to defendant's stated good intentions, the Court already gave him an opportunity to do exactly that which he now claims to want when

it granted him compassionate release last year.  Defendant stands before the Court having squandered the unique opportunity to use the pandemic to get a fresh and early start on his post-incarceration life.  While he has not apparently committed a crime, his non-compliance with his conditions of release, his lack of respect for the conditions imposed by the Court, and his repeated dishonesty and, at times, outright subterfuge all do not bode well for defendant's future compliance.  The defendant's proposed sentence is inadequate to achieve the stated considerations of the revocation sentencing statute.

## Conclusion

The government recommends that the Court revoke defendant's term of special supervised release and return him to the custody of the Bureau of Prisons to serve out the length of his original sentence until August 16, 2023, when he can then be released to his original term of three years' supervised release.  The government additionally requests the Court impose any outstanding restitution and fees owed.

Respectfully submitted,

JOHN J. FARLEY
ACTING UNITED STATES ATTORNEY

Dated: March 29, 2021                    By: /s/ Charles L. Rombeau
Charles L. Rombeau
Assistant United States Attorney
NY Bar No. 4326500
53 Pleasant Street, 4th Floor
Concord, NH  03301
(603) 225-1552
charles.rombeau@usdoj.gov